BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IN RE: GENERAL MOTORS LLC           MDL Docket No. 2543
IGNITION SWITCH LITIGATION

PLAINTIFF CYNTHIA EDWARDS, MADELINE THOMAS, JAY PRASSEL,
HOPE MADEWELL AND JEANNE JONES BALL'S
RESPONSE TO THE MOTION TO TRANSFER

      Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiffs on behalf of themselves and the putative class in *Edwards et al. v. General Motors LLC et al.*, No. 14-cv-21949-MGC (S.D. Fla.), respectfully submit this response to the Motion to Transfer actions to the Central District of California pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings filed by Plaintiffs Teleso Satele and Carlota Onofre (D.E. 7, the "Motion to Transfer").

      Plaintiffs support consolidating the related actions. Plaintiffs respectfully request, however, that the Panel transfer the Actions to the Southern District of Florida because docket conditions are more conducive to a swift resolution of this matter.

      For the reasons stated in the memorandum in support of the Motion to Transfer (D.E. 7-1), Plaintiffs support consolidating the related actions (the "GM Ignition Switch Actions" or the "Related Actions") for coordinated pretrial proceedings, but respectfully requests that the Panel transfer the GM Ignition Switch Actions to the Southern District of Florida, where thirteen GM Ignition Switch Actions have been brought before capable jurists with experience presiding over complex MDL litigation. *See Santiago v. General Motors, LLC*, No. 14-cv-21147 (S.D. Fla.); *DeSutter v. General Motors, LLC*, No. 14-cv-80497 (S.D. Fla.); *Taylor v. General Motors Co.*, No. 14-cv-80618-DMM (S.D. Fla.); *Espineira v. General Motors LLC, et al.*, No. 14-cv-21417-FAM (S.D. Fla.); *Frank v. General Motors LLC*, No. 14-cv-21652-MGC (S.D. Fla.); *Knetzke v.*

*General Motors LLC, et al.*, No. 14-cv-21673-JAL (S.D. Fla.); *Emerson, et al. v. General Motors LLC, et al.*, No. 14-cv-21713-UU (S.D. Fla.); *Levine v. General Motors, LLC*, No. 14-21752-JAL (S.D. Fla.); *Markle v. General Motors LLC, et al.*, No. 14-cv-21788-FAM (S.D. Fla.); *Duarte v. General Motors LLC, et al.*, No. 14-CV-21815 (S.D. Fla.); *Harris et al. v. General Motors LLC et al.*, No. 14-cv-21919-JAL (S.D. Fla.); *Lannon et al. v. General Motors LLC, et al.*, No. 14-cv-21933-KMM (S.D. Fla.); *Edwards et al. v. General Motors LLC, et al.*, No. 14-cv-21949-MGC (S.D. Fla.).

## I.  BACKGROUND OF THE GM IGNITION SWITCH ACTIONS

On February 7, 2014, GM revealed that ignition switches in certain GM vehicles were defective and that a recall would be conducted to replace the switches.  The defect — which was discovered by Florida Engineer Mark Hood — is that the switch can unintentionally move from the "run" or "on" position to the "accessory" or "off" position, resulting in the non-deployment of airbags and loss of power, vehicle speed control, power steering, and braking.  These defective switches have caused at least thirteen deaths.  Since New GM's announcement of the Recall, over 60 putative class actions have been filed.  Plaintiffs each own one of the recalled vehicles and have collectively filed one such action in the Southern District of Florida.

## II. ARGUMENT

The GM Ignition Switch Actions should be consolidated. That said, both Old and New GM sold the recalled, defective vehicles nationwide, and as a result the Related Actions have been filed in over 20 different federal districts. "Given the wide dispersal of these actions throughout the country, no forum stands out as a focal point for this litigation." *In re Tribune Co. Fraudulent Conveyance Litig.*, 831 F. Supp. 2d 1371, 1372 (J.P.M.L. 2011).  The Panel should therefore transfer the Related Actions to the district that has the resources to resolve them

in the swiftest manner possible — the Southern District of Florida. *See In re Wright Medical Tech., Inc. Conserve Hip Implant Prods. Liab. Litig.*, 844 F. Supp. 2d 1371, 1373 (J.P.M.L. 2012) (transferring actions involving a product that was "marketed and sold throughout the nation" to a district that "enjoys favorable docket conditions").

The Southern District of Florida is less burdened and has more favorable docket conditions than other proposed districts. For example, the Southern District of Florida has only 4,752 civil cases pending.[1] That is less than the 10,613 cases pending in the Central District of California, the 5,814 cases pending in the Northern District of California, the 5,583 cases pending in the Eastern District of Michigan, or the 13,377 cases pending in the Southern District of New York. *Id.* The Southern District of Florida is also the top district in the country in median time from filing to disposition in civil cases at 4.8 months.[2]

Moreover, the District's judges are experienced with MDL litigation, as evidenced by the Panel's selection of the Southern District of Florida as the transferee court in other MDL actions. The thirteen Actions pending in the Southern District of Florida have been assigned to well-qualified MDL jurists such as Chief Judge Federico A. Moreno, who has been praised by the Eleventh Circuit for his deft management of the sprawling *In re Managed Care* MDL litigation. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1271, 1276 (11th Cir. 2004) (observing that Chief Judge Moreno "has done a fine job in addressing a wide range of pretrial motions," and expressing confidence that "the district court — a veritable Leviathan — will be able to prevent the parties from regressing to a state of nature").

---

[1] *See* United States Courts, U.S. DISTRICT COURTS CASELOAD STATISTICS 2013 - Civil, *available at* http://www.uscourts.gov/uscourts/Statistics/FederalJudicialCaseloadStatistics/2013/tables/C00Mar13.pdf.

[2] *See* United States Courts, FEDERAL COURT MANAGEMENT STATISTICS, December 2013, *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourt Management Statistics/2013/district-fcms-profiles-december-2013.pdf&page=92.

The alleged connections that certain other districts have to the GM Ignition Switch Actions do not outweigh the efficiency advantage that the Southern District of Florida offers. The California Plaintiffs claim that the number of actions pending in the Central District of California supports transfer there. But "[b]ecause potential plaintiffs and putative class members will reside in every corner of the country and defendants are located in several states, the location of the currently filed cases is not a particularly significant factor." *In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011).[3]

The California Plaintiffs also argue that the Central District of California is easily accessible, with three airports servicing the area, but that does not set it apart from the Southern District of Florida, which is also served by three international airports. *See In re Enfamil Lipil Marketing & Sales Practices Litig.*, 764 F. Supp. 2d at 1357 (deeming the Southern District of Florida as "readily accessible"). Finally, the California Plaintiffs argue that several judges in the Central District of California have experience managing similar MDLs. While the California Plaintiffs may be correct in this regard, there are equally skilled jurists in the Southern District of Florida. Additionally, one of the judges who the California Plaintiffs identified — Judge Selna — is still managing an active MDL containing 154 pending actions. *See In re Toyota Motor Corp. Marketing, Sales Practices, & Products Liab. Litig.*, 10-ml-02151 (C.D. Cal.); MDL Statistics Report - Distribution of Pending MDL Dockets. To put that into perspective, the Southern District of Florida currently has 8 active MDLs before seven different judges for a grand total of only 134 actions pending. In other words, the Southern District of Florida has less

---

[3] This increased number of California actions is likely attributed to nothing more than population. Yet based on 2011 figures Florida had higher average per-dealership sales than California, New York, and Michigan, a statistic that is arguably more telling (and more significant in terms of damages calculations and class members affected) than mere number of actions.

pending MDL actions than Judge Selna. The factors that the California Plaintiffs have identified, therefore, do not support transferring the Actions to the Central District of California.

The connections that the Michigan Plaintiffs have identified also do not warrant transferring the Actions to the Eastern District of Michigan over the Southern District of Florida. Even though GM is headquartered within the Eastern District of Michigan, the Panel routinely transfers actions to districts other than the defendant's home district, particularly when the transferee district enjoys more favorable docket conditions. *See, e.g., In re Wright Medical Tech., Inc. Conserve Hip Implant Prods. Liab. Litig.*, 844 F. Supp. 2d at 1373 (transferring actions against Tennessee corporation involving products that were "marketed and sold throughout the nation" to Northern District of Georgia based, in part, on "favorable docket conditions"). Indeed, the general basis for transferring actions to a defendant's home district — that witnesses and documents will be located there — does not necessarily apply here. Some of the defective vehicles were not even assembled in Michigan. Thus, potential witnesses may not be located in Michigan. In fact, the Panel has in the past centralized litigation against GM outside of Michigan. *See, e.g.*, *In re General Motors Corp. Piston Slap Prods. Liab. Litig.*, 314 F. Supp. 2d 1386 (J.P.M.L. 2004); *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 293 F. Supp. 2d 1381 (J.P.M.L. 2003).

The arguments in favor of the Southern District of New York are similarly unpersuasive. GM essentially argues that its Motion to Enforce the Sale Order and Injunction in the Bankruptcy Court will be dispositive as to many, if not all, of the Ignition Switch Actions. But the Bankruptcy Court has moved promptly to enter a Scheduling Order for resolution of what it has identified as "Threshold Issues" with respect to the Motion to Enforce that should determine whether the Sale Order bars any or all of the claims asserted against New GM.

If New GM is correct as to its Motion to Enforce, then there will presumably be little left to do with these actions. On the other hand, if New GM is wrong on its Motion to Enforce, then the continued prosecution of the Ignition Switch actions against New GM (and Delphi, for that matter) will have little or nothing to do with Old GM's bankruptcy case. If claims against New GM are not barred by the Sale Order — which is something that will get determined one way or the other — then those claims can and should proceed with little need for further interaction with the Bankruptcy Court. In other words, assuming the Bankruptcy Court determines whether any claims are precluded under GM's Motion to Enforce, there will be little if any further involvement of the Bankruptcy Court in the remaining litigation which is by non-debtors (the plaintiffs) against other non-debtors (New GM and New Delphi, both of which were the buyers of the debtors' assets and not debtors themselves).

## CONCLUSION

Plaintiffs respectfully urge the Panel to centralize the GM Ignition Switch Actions and transfer them all to the Southern District of Florida.

Dated: May 28, 2014                              Respectfully submitted,

                KOZYAK TROPIN, & THROCKMORTON P.A.
                *Counsel for Plaintiffs*
                2525 Ponce de Leon Blvd., 9th Floor
                Coral Gables, Florida 33134
                Telephone: (305) 372-1800

                By: /s/ Adam M. Moskowitz
                Adam M. Moskowitz
                amm@kttlaw.com
                Harley S. Tropin
                hst@kttlaw.com
                Thomas A. Tucker Ronzetti
                tr@kttlaw.com
                Tal J. Lifshitz
                tjl@kttlaw.com
                Robert Neary
                rn@kttlaw.com

353648.7

Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: 205-314-0500
Gregory O. Wiggins
gwiggins@wcqp.com
Kevin W. Jent
kjent@wcqp.com


Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, 32nd Floor
Miami, Florida 33131
Telephone: (305) 350-5690
Facsimile: (786) 364-7995
Allan A. Joseph
ajoseph@fuerstlaw.com
Florida Bar Number: 893137

353648.7